2025 IL App (1st) 242446-U

FIRST DIVISION
December 15, 2025

No. 1-24-2446

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JETZ SERVICE CO., INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CH 18046 |
| | ) | |
| JAY & HARRY CORP., | ) | Honorable |
| | ) | Anna M. Loftus, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County; substantial compliance with Illinois Supreme Court Rule 13 regarding notice of defendant's attorney's withdrawal was sufficient; the trial court did not err when it ruled on the merits of plaintiff's motion for summary judgment rather than enter a default for defendant's failure to file a response to the motion; defendant did not have a right to a default judgment for failing to respond to plaintiff's motion for summary judgment; and defendant failed to establish the trial court abused its discretion in denying the motion to reconsider the grant of summary judgment in favor of plaintiff.

¶ 2    Plaintiff, Jetz Service Co., Inc. (Jetz), filed a three-count complaint against defendant, Jay & Harry Corp., (J & H), for breach of a lease for Jetz to place coin operated laundry machines in J & H's hotel. Both parties were successors in interest to the original lease. After years of negotiations, Jetz filed a motion for summary judgment. Subsequently, J & H's then-attorney

filed a motion to withdraw, which the trial court granted. J & H did not answer Jetz's motion for summary judgment. The trial court granted summary judgment to Jetz on count I of the complaint seeking monetary damages for breach of the lease. J & H filed a pleading styled as a motion to vacate default judgment or in the alternative to reconsider summary judgment. The trial court construed the pleading as a motion to reconsider and denied the motion. For the following reasons, we affirm the trial court's judgment and remand the case for further proceedings.

¶ 3                                    BACKGROUND

¶ 4     In March 2016 plaintiff, Jetz Service Co. Inc., filed a first amended three-count complaint against defendant, Jay & Harry Corp. (J & H) for breach of a lease. The original lease was for "the laundry room(s) or laundry area(s) in the building(s) commonly known as *** DaysInn Elk Grove Village" for the purpose "to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises." Jetz filed the complaint, alleging that the lease term was to end on December 4, 2020. The first amended complaint (hereinafter "complaint") alleged that J & H attempted to terminate the lease prematurely. Thereafter, J & H disconnected Jetz's laundry machines and replaced them with different laundry machines, also in violation of the lease. J & H demanded Jetz remove its laundry machines from the premises, which Jetz did "solely for the purpose of being preserved and *** not an abandonment of Jetz's sole and exclusive right to occupy" the premises. Jetz demanded J & H comply with the terms of the lease, including reinstalling Jetz's equipment, and J & H refused.

¶ 5     Count I of the complaint was for breach of contract and sought "the lost income from the time when the laundry equipment *** was disconnected *** until either (1) the date that the laundry equipment is reconnected" or the end of the then-current lease term. Count II sought, in

the alternative, specific performance of the lease. Count II alleged, in part, that "Jetz cannot assume a leasehold interest at another property that would allow it access to J & H's guests." Count II also alleged that "Jetz cannot replicate the circumstances present at the Property with respect to this particular laundry room, nor can Jetz replace J & H's guests as users for its Equipment." Count III of the complaint sought a preliminary injunction against J & H from violating the terms of the lease.

¶ 6　　On May 9, 2016 J & H filed a motion to dismiss counts II and III of the complaint for failure to state a claim. On May 25, 2016 the trial court entered a briefing schedule on J & H's motion to dismiss. Following briefing of the motion by the parties, on July 20, 2016 the trial court set a hearing date (September 7, 2016) on the motion. The trial court entered and continued the motion to dismiss by agreement several times. On July 10, 2020 the trial court entered and continued the motion for status on settlement. The court again entered and continued the motion for status on settlement several times over a period of years, and no settlement was reached after numerous attempts at settlement conferences.

¶ 7　　On March 25, 2024 the trial court entered an order stating that, the matter coming to be heard on status, and counsel for J & H not appearing, Jetz may file a response to the motion to dismiss and is ordered to file its motion for summary judgment on or before March 29, 2024. The court granted J & H leave to file a reply to Jetz's response to J & H's motion to dismiss and a response to Jetz's motion for summary judgment, with Jetz having leave to file a reply. The court set the matter for March 29, 2024 for hearing. (The court entered similar orders concerning J & H's counterclaim; but that counterclaim is not at issue in this appeal.)

¶ 8　　The trial court continued the matter to April 22, 2024. On April 15, 2024 Jetz filed its motion for summary judgment. The motion noted that J & H had not responded to (count I of)

- 3 -

Jetz's first amended complaint, and Jetz only sought summary judgment as to count I. The motion for summary judgment prayed for $98,303.66 "in damages through the current lease term (2030)" plus attorney fees and costs pursuant to a provision in the lease. In support of the motion for summary judgment Jetz attached an affidavit by its president. Jetz's president averred, in pertinent part, that Jetz is entitled to $41,565.00 in lost income.

¶ 9      On April 22, 2024 with Jetz's counsel present but J & H's counsel not present, the trial court entered and continued the motion for summary judgment (and Jetz's motion to dismiss the counterclaim and J & H's motion to dismiss) to April 25, 2024. On April 25, 2024, with J & H's attorney not present, the trial court continued the matter to May 3, 2024. On April 30, 2024, the attorney for J & H filed a motion to withdraw as counsel. The motion to withdraw stated, in part, as follows:

> "NOTICE TO DEFENDANT: Please be advised, in accordance with Supreme
> Court Rule 13, that to insure notice of any action in said cause, you should retain
> other counsel herein or file with the clerk of the court, within 21 days after entry
> of the order of withdrawal, your supplementary appearance stating therein an
> address at which service of notices or other documents may be had upon you."

¶ 10      Attached to the motion to withdraw is a document titled "Acknowledgment Of Receipt" signed by a representative of J & H. The document states, "The undersigned, Vipul Patel, principal of [J & H] hereby acknowledges receipt of the amount [*sic*] of the above Motion to Withdraw on the below date" (April 30, 2024). J & H's attorney also filed a Notice Of Motion to Withdraw stating that on April 30, 2024, J & H's attorney served Patel with the notice by hand delivery. The Notice of Motion also includes an Acknowledgement of Receipt signed by Patel on April 30, 2024.

¶ 11    The May 3, 2024 hearing was conducted remotely by Zoom. The trial court entered an order granting the motion to withdraw. The order states that Patel was "personally served with the Motion to Withdraw." The order directs J & H "to file within 21 days a supplementary appearance." The order also reads as follows:

"As Defendant did not appear in person or through substitute counsel at today's hearing, then, within three days of the entry of this order, the withdrawing attorney shall serve the order upon the party in the manner provided in paragraph (c)(2) of Rule 13 and file proof of service of the Order."

¶ 12    The trial court continued all motions to June 4, 2024, and later continued the matter to June 20, 2024, for ruling. On June 20, 2024 the court entered an order granting Jetz's motion to dismiss J & H's counterclaim with prejudice, striking J & H's motion to dismiss, and continuing the motion for summary judgment.

¶ 13    On June 24, 2024 Jetz filed a Supplemental Memorandum In Support of Its Motion for Summary Judgment. Jetz stated that J & H "sold the Property without warning." The supplemental memorandum asserted that for "years" J & H's counsel had "represented during settlement discussion that [J & H] intended to place Jetz either at the subject Property" or at another possible hotel. The supplemental memorandum continued:

J & H "even allowed the Lease to renew for an additional term, rather than terminate the lease as was its right. Jetz relied upon these representations and actions to believe that it would be resolving its lost income rights and addressing future income opportunities with either a resumed or a new tenancy."

¶ 14     Jetz's supplemental memorandum argued that it should not be penalized and prevented from seeking monetary damages and sought damages through the end of the lease term or, "at

the very least *** damages through the date of judgment, and from that point Jetz would seek to mitigate for the remaining term on the Lease."

¶ 15     On June 25, 2024 the trial court entered a Memorandum of Judgment in favor of Jetz and against J & H in the amount of $86,600.48 and an order of judgment. The order states that the damages include lost income calculated at $6.52 per day for 4,016 days, from June 27, 2013 until June 25, 2024, and $60,416.16 in costs, expenses, and attorney fees though May 28, 2024. The court entered an order voluntarily dismissing counts II and III of the complaint without prejudice.

¶ 16     On July 22, 2024 an attorney filed an appearance on behalf of J & H, and the following day J & H's new attorney filed a Motion To Vacate judgment, Or In The Alternative, Motion For Reconsideration. In support of the motion to vacate or reconsider, J & H attached an affidavit by Patel, who identified himself as the manager and operator of J & H and the subject motel. The affidavit contains the following averments that are relevant to this appeal:

"5. Since 2014, when this lawsuit commenced, I have been offering Plaintiff to return its coin operating [*sic*] laundry machines back into the DaysInn motel or other motels I have been managing, but Plaintiff refused. Plaintiff wanted an unreasonable amount of cash money that I did not have and still do not have to this date.

6. Upon information and belief, Plaintiff took its coin-operated laundry machines out of the motel and placed them somewhere else.

7. I have been willing to have Plaintiff return its laundry machines into DaysInn motel since 2014, but the motel no longer exists because the building was demolished by the Elk Grove Village in 2021.

- 6 -

* * *

9. On April 30, 2024, I went to my former counsel's office, Mr. Dragos B. Boscoianu, where he informed me that there was nothing else that he could do for me in this action and that he wanted to withdraw from this action.

* * *

11. I informed Mr. Boscoianu that I will search for another attorney to represent the Defendant Company in this case and I signed a document for Mr. Boscoianu to permit him to withdraw.

12. Mr. Boscoianu did not inform me of the next court date or how long I have to obtain a new attorney. Although Mr. Boscoianu's Motion to Withdraw did ask for 21 days to obtain new counsel, I was not made aware of it or when the 21 days started to run.

13. **I never received this Court's May 3, 2024, Order that gave me 21 days to obtain a new counsel.**

14. At some time in the end of June or the start of the month of July, 2024, I received from Plaintiff's attorney, via regular mail *** court documents some of which are dated June 25, 2024. *** These documents caused me to hasten my search for a new counsel to represent the Defendant Company.

15. During the week of July 15, 2024, I consulted with Attorney Basil Salem regarding this case and on July 19, 2024, I signed a Retainer Agreement with Mr. Salem on behalf of the Defendant Company, Jay & Harry Corp." (Emphasis in original.)

¶ 17    On October 10, 2024 Jetz filed a Response In Objection to Defendant's Motion to Vacate/For Reconsideration." Jetz attached to its response a printout of an email sent on May 3, 2024, from J & H's former attorney to the trial judge and copied to Jetz's attorney regarding the motion to withdraw. The email reads in pertinent part as follows:

"Dear Judge:

Attached please find the draft order.

My client just walked in the office and I hand delivered him the draft."

¶ 18    On October 24, 2024 J & H filed a reply in support of its motion to vacate or to reconsider. The reply argues, "[a]n email claiming to have handed a proposed draft order is not an affidavit of services [*sic*] of the actual entered order." The reply also argues, "[e]ven assuming that Defendant was handed the proposed draft order, whether he knew what the document he received was and whether he had 21 days to obtain counsel is also problematic, particularly when the Defendant cannot read English." (However, J & H's motion to vacate included an affidavit from Patel's nephew stating that he had acted as Patel's translator for Patel's affidavit.)

¶ 19    The trial court conducted an evidentiary hearing on the Motion To Vacate Judgment Or In The Alternative Motion For Reconsideration. There is no transcript of the hearing in the record nor a bystander's report. However, the court order recited that J & H's former attorney testified, as well as J & H's agent. After the evidentiary hearing the court entered an order finding that J & H's agent did in fact receive a copy of the order allowing a withdrawal although it was not stamped. The court construed the motion as a motion to reconsider and found J & H "failed to establish a viable basis for the Court to reconsider its June 25, 2024 Order." The court found, based on testimony from J & H's prior counsel, that J & H

"had actual notice of the presentment date of [its] prior counsel's Motion to Withdraw as counsel (having received copies of the notice of Motion and the Motion itself with a pre-determined date and time given by the Court and Defendant signed an acknowledgment of receipt thereto), the time within which [it] had to obtain new counsel, and the subsequent court date (having received by hand delivery a copy of the draft court order that was ultimately entered). Strict compliance with Supreme Court Rule 13(c)(2) and 13(c)(4) is not required given the intent of the Rule was met."

¶ 20   The trial court's order also found that J & H improperly attempted to assert affirmative defenses for the first time in a motion to reconsider, and that even if not waived, the affirmative defense of mitigation of damages is not well taken. The court found:

"[J & H's] argument that [Jetz] should have agreed to [its] terms to return the equipment to the original location (without acknowledging [its] breach and the associated damages to [Jetz]) to limit damages is not supported by the law. [J & H's] alternative argument that [Jetz] should have attempted to place its equipment with a third party to mitigate damages, when [J & H] lulled [Jetz] into thinking it could return the equipment to the original location or place the equipment in a new hotel to be purchased by [J & H] (which never materialized) fails to support the affirmative defense."

¶ 21   This appeal followed.

¶ 22                                    ANALYSIS

¶ 23   This is an appeal from an order denying a motion to reconsider an order granting summary judgment on a claim of breach of contract. J & H also argues that the trial court should

have entered a default judgment rather than summary judgment, and that the trial court erred in denying its motion to vacate a default judgment. "Our standard of review for a motion to reconsider is determined by the basis of the motion. [Citation.] Where, as here, the motion was based on new matters, whether additional facts or new legal theories, the standard of review is abuse of discretion. [Citation.]" *Zahdan v. Frontline Business Enterprise Inc.*, 2024 IL App (1st) 221351, ¶ 45. "The decision to grant or deny a motion to vacate a default judgment lies within the sound discretion of the trial court, and we will reverse only if the trial court abused its discretion." *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999).

¶ 24     First, J & H argues that no appearance was on file and there was no response to Jetz's motion for summary judgment; therefore, as a matter of law, the only judgment the trial court could enter on Jetz's motion for summary judgment was a default judgment. J & H argues that the absence of an appearance or response was due to its former attorney failing to strictly comply with Illinois Supreme Court Rule 13. J & H argues that Illinois Supreme Court Rule 13 requires strict compliance and implies that in the absence of strict compliance, the judgment should be vacated. J & H also argues that since the judgment should have been a default judgment, the trial court erred in denying its motion to vacate. "This issue concerns compliance with a supreme court rule and, therefore, our standard of review is *de novo.*" *People v. Elders*, 349 Ill. App. 3d 573, 586 (2004).

¶ 25     "Supreme court rules 'have the force of law and are to be construed in the same manner as statutes.' [Citation.]" *In re Willow M.*, 2020 IL App (2d) 200237, ¶ 20. Generally, our supreme court requires strict compliance with its rules and presumes that the rules "will be obeyed and enforced as written." *People v. Gawlak*, 2019 IL 123182, ¶ 34. However, "some rules require only substantial compliance ([citations])." *Babcock v. Wallace*, 2012 IL App (1st)

111090, ¶ 10 (and cases cited therein). A trial court "need only substantially comply" when the defendant "has no constitutional right to [the] admonishments." *People v. Hietschold*, 2025 IL 130716, ¶ 20. "Substantial compliance 'does not require a strict verbatim reading' of the admonishments, but rather 'the court must impart to a defendant largely that which is specified in the' [rule.] [Citation.]" *Hietschold*, 2025 IL 130716, ¶ 20. This court has found specifically with regard to Rule 13 that strict compliance is not always required. In *In re T.A.*, 2023 IL App (5th) 220572-U, ¶ 25, the court recognized that "[t]he formal requirements of Rule 13(c)(2) may be waived in certain situations." See *In re T.A.*, 2023 IL App (5th) 220572-U, ¶ 25 (citing *In re Willow M.*, 2020 IL App (2d) 200237, ¶ 22), *People v. Bowman*, 138 Ill. 2d 131, 146 (1990) (construing Rule 13(c) and observing that "formal procedures may be waived if it appears that the court has considered the merits of the motion").

¶ 26    It is undisputed that defendant was not present at the hearing when its attorney was granted leave to withdraw.

¶ 27    Rule 13(c)(4) states, "If the party does not appear at the time the motion for withdrawal is granted, either in person or by substitute counsel, then, within three days of the entry of *the order of withdrawal*, the withdrawing attorney shall serve the *order* upon the party in the manner provided in paragraph (c)(2) of this rule and file proof of service of the order." (Emphases added.) Ill. S. Ct. R. 13(c)(4) (eff. Jan. 1, 2023). Paragraph (c)(2) states that that notice shall be given "by personal service, certified mail, or a third-party carrier" or "electronically, if receipt is acknowledged by the party." Ill. S. Ct. R. 13(c)(2).

¶ 28    It is clear that there was no strict compliance.

¶ 29    However, before withdrawing from the case, J & H's former attorney served J & H with notice of the motion to withdraw advising it that it "should retain other counsel" or, "within 21

days after entry of the order of withdrawal, [file] a supplementary appearance." Ill. S. Ct. R.

13(c)(2). J & H signed a receipt acknowledging that it received a copy of the motion to withdraw

and a principal of the company signed a consent for the attorney to withdraw. The purpose of the

rule is to insure that a party receives notice of court proceedings and has an opportunity to secure

replacement representation. The rule states that it is intended "to insure notice [to the former

client] of any action in said cause." Ill. S. Ct. R. 13(c)(2). This court has further recognized that

"the purpose of Rule 13 is to ensure that the client of withdrawing counsel is not left in a position

where he is prejudiced." *Jastrzebski v. Farnik*, 2017 IL App (1st) 160434-U, ¶ 37. These

purposes can be achieved without strict compliance. See, *e.g*., *In re Davion R.*, 2019 IL App (1st)

170426, ¶¶ 70-71 (finding that Rule 13 did not apply because the respondent initiated the

withdrawal rather than the attorney), *In re S.P.*, 2019 IL App (3d) 180476, ¶ 44 (stating reasons

why the risk of an erroneous deprivation of the client's rights was minimal without compliance

with Rule 13 including that the client was aware of the proceedings).

¶ 30    We find that in this case substantial compliance with Rule 13(c) was permissible and that

J & H's former attorney demonstrated such compliance. Jetz asserts that J & H received actual

notice that the trial court granted J & H's former attorney's motion to withdraw and the trial

court's order to file a supplementary appearance within 21 days. Jetz relies on J & H's former

attorney's email to the court, which was attached to the objections to the motion for

reconsideration. The email stated that his client had entered his office and had been handed the

draft order and the trial court's findings after the hearing. The trial court conducted an

evidentiary hearing on J & H's motion to vacate or for reconsideration where J & H's former

attorney testified and J & H's agent testified. After the evidentiary hearing, the trial court made a

finding that J & H received a copy of the unstamped draft order in the attorney's office on May

3, 2024, the date it was entered. The language in the trial court's order denying the motion to vacate finds J & H "received by hand delivery a copy of the *draft* court order that was *ultimately* entered." (Emphases added.)

¶ 31 Although there is no transcript of the hearing, based on the order, logically we may conclude the attorney testified consistently with the contents of his email that he gave a copy of the proposed order personally to defendant on May 3, 2024.

> "As the appellant on this issue, [J & H] is responsible for presenting a full record supporting [its] claim of error. In the absence of a complete record, we must presume that the trial court's judgment conformed with the law and had sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92. Without a transcript of the hearing at which the motion was argued and ruled upon, we have no basis to hold that the trial court abused its discretion ***. Accordingly, any doubts arising from the incomplete record must be resolved against [J & H] on this issue." *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 68.

¶ 32 Generally, where "the question before us is whether substantial, rather than strict, compliance with a mandatory statutory requirement *** is permissible and, if so, whether [the party] demonstrated such compliance *** we conduct a twofold analysis. First, we look to the purpose of the [provision] to determine whether the purpose was achieved without strict compliance. Next, we decide whether [a party] suffered any prejudice from [the] failure to strictly comply ***." *Behl v. Gingerich*, 396 Ill. App. 3d 1078, 1086 (2009).

¶ 33 "[S]ubstantial compliance requires communicating the [rule's] ' "essence," ' rather than ' "wholly" what is specified' in the [rule]. [Citation.]" *Hietschold*, 2025 IL 130716, ¶ 32. The trial court heard the testimony of the former attorney and defendant's agent. After hearing the

testimony, the court concluded that J & H received a copy of the order stating that counsel's motion to withdraw was granted and that J & H had to obtain substitute counsel or file a supplemental appearance, regardless of the exact date the 21-day period expired. The purpose of the 21-day deadline is to prevent the trial court from taking action to prejudice an unrepresented party (which, as discussed below, it did not), not to establish a deadline by which a party must obtain an attorney. *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 19 ("courts have held that the spirit of Rule 13 requires that a party be given a 21-day transition period following the withdrawal of their attorney to obtain new counsel or file their own supplementary appearance and that the trial court take no action during that period that might prejudice the party's rights."). Under *Foutch*, this court cannot conclude that the trial court's finding was erroneous. We find that the trial court properly found that the "intent of the Rule was met" because J & H's former counsel achieved the purpose of the rule. See *Behl*, 396 Ill. App. 3d at 1090.

¶ 34    We also find that J & H was not prejudiced by the failure to strictly comply with the rule. J & H argues that it was prejudiced by the failure to strictly comply with Rule 13(c)(4) because that is what allegedly caused it to fail to respond to Jetz's motion for summary judgment. We disagree. Prejudice in this context means a lack of notice to the party of an action in the case and/or the deprivation of an opportunity to appear or to obtain counsel. See *In re M.B.*, 2019 IL App (2d) 181008, ¶¶ 25-26 (discussing *In re S.P.*, 2019 IL App (3d) 180476, and *In re Robert S.*, 357 Ill. App. 3d 214 (2005)). The *M.B.* court distinguished *S.P.* on the basis that, unlike in *S.P.* there was no opportunity for the party who's counsel withdrew to reappear or for new counsel to be appointed. *In re M.B.*, 2019 IL App (2d) 181008, ¶ 25. The *M.B.* court found that "this case lacks two critical facts that allowed the court in *S.P.* to find that the Rule 13(c) violations

resulted in only a minimal risk of an erroneous deprivation of rights." *Id.* In *Robert S.*, the court found that "the trial court erred by granting counsel's motion to withdraw and then immediately conducting a hearing." *In re Robert S.*, 357 Ill. App. 3d at 218.

¶ 35    In this case, Jetz filed its motion for summary judgment prior to J & H's attorney's withdrawal. Thus, J & H was aware of the pending motion for summary judgment. While the motion was pending, J & H was aware that it would no longer be represented by its former attorney, likely as of May 3. Nor did the trial court rule on the motion within the 21-day prohibition on trial court action after the withdrawal of a party's attorney. *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 19. J & H's counsel withdrew on May 3, 2024. More than 21-days later, on May 28, 2024, Jetz's attorney filed a supplemental affidavit stating Jetz's additional attorney fees. On June 4, 2024, the trial court continued all pending matters to June 20, 2024. On June 24, 2024, Jetz filed a supplemental brief in support of its motion for summary judgment. On June 25, 2024 the trial court ruled on the motion. J & H knew it should find a new attorney and J & H had ample opportunity, well beyond 21 days, to obtain substitute counsel.

¶ 36    We find that J & H's former attorney substantially complied with Rule 13(c) because counsel achieved the purpose of the rule; we also find that substantial compliance was permissible in this case because J & H was not prejudiced. *Behl*, 396 Ill. App. 3d at 1086. Strict compliance was not required in this case; therefore, J & H's argument fails.

¶ 37    Having found that the failure of strict compliance with Rule 13(c) does not require this court to reverse the trial court's judgment, we turn to J & H's argument that the trial court should have entered a default judgment, rather than summary judgment. J & H only states that, "since there was no attorney appearance on the record for the corporate Defendant [J & H] and no response was ever filed to the summary judgment, then as a matter of law, the only judgment the

lower court could have entered was a default judgment, [not] a summary judgment as was done in this case." Jetz argues that it "had the ability to move for summary judgment at the time it did" and that J & H "provided *** no authority stating why the circuit court could not have proceeded with summary judgment."

¶ 38    We agree that J & H's opening brief offers no legal support or argument in support of its claim. "The appellate court is not a depository in which the appellant may dump the burden of argument and research. [Citations.] Supreme Court Rule 341(h)(7) ([citation]) requires the appellant to clearly set out the issues raised, supported by relevant authority. [Citation.]" *Willaby v. Bendersky*, 383 Ill. App. 3d 853, 861 (2008). "Arguments presented without citation to authority are [forfeited.] [Citation.]" *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 465 (2007). J & H's argument that the only judgment the trial court could enter was a default judgment is forfeited.

¶ 39    Forfeiture aside, we find that the trial court was not required, "as a matter of law," to enter a default judgment in this case.

> "[A]n order of default is simply an interlocutory order that precludes the defaulting party from making any additional defenses to liability but in itself determines no rights or remedies. [Citation.] An order of default may be entered for want of an appearance, or for failure to plead ([citation]) and is within the sound discretion of the circuit court to enter ([citation])." (Internal quotation marks omitted.) *CitiMortgage, Inc. v. Moran*, 2014 IL App (1st) 132430, ¶ 22.

As for summary judgment, the Code of Civil Procedure provides that, "[a]ny time after the opposite party has appeared or after the time within which he or she is required to appear has expired, a plaintiff may move with or without supporting affidavits for a summary judgment in

his or her favor for all or any part of the relief sought." 735 ILCS 5/2-1005(a) (West 2024),

*Medrano v. Production Engineering Co.*, 332 Ill. App. 3d 562, 570 (2002) ("a party may file a

motion for summary judgment at any time").

¶ 40    First, we reject J & H's argument that "the only way the lower court could have

determined that there was no genuine issue of material fact is if [the] opposing party filed

something in response." This court, when construing an administrative agency's procedural

rules, observed that "the standard for granting summary judgment is not whether a party filed a

response but whether the right of the moving party is clear and free from doubt. [Citation.] ***

When a motion for summary judgment is unopposed, the court must nonetheless conduct an

examination to determine whether the moving party is entitled to summary judgment." *Forest

Preserve District of Cook County v. Illinois Labor Relations Board*, 369 Ill. App. 3d 733, 750-51

(2006) (citing *Midfirst Bank v. Abney,* 365 Ill. App. 3d 636, 643 (2006)), 23 Ill. Law and Prac.

Judgments § 74.

¶ 41    Second, we reject J & H's argument that the trial court had to enter a default because J &

H did not respond to the motion for summary judgment. "[T]he [Code] contemplates that in an

action for summary judgment the opposite party should have some reasonable time to prepare a

response." (Internal quotation marks omitted.) *Deaton v. Lloyd's Jewelry Co.*, 7 Ill. App. 3d 926,

929 (1972) (quoting now 735 ILCS 5/2-1005(c) (West 2024)). We have found that the failure to

strictly comply with Rule 13(c) did not deprive J & H of reasonable time to prepare a response to

Jetz's motion for summary judgment. J & H's argument is contrary to law where default

judgment is proper based on a party's failure to answer or plead (*Moran*, 2014 IL App (1st)

132430, ¶ 22, 735 ILCS 5/2-1301(d) (West 2024)), but our law expressly authorizes summary

judgment even prior to a party's answer, so long as the party had a reasonable opportunity to

respond to the motion for summary judgment, which J & H had in this case. There is no legal basis for requiring that a default judgment be issued under these circumstances. J & H's argument fails.

¶ 42    Next, to the extent J & H's postjudgment motion was a motion to reconsider the summary judgment, J & H argues that a material question of fact as to damages exists to preclude summary judgment. A material question of fact concerning damages may preclude summary judgment. *Corlett v. Caserta*, 204 Ill. App. 3d 403, 415 (1990) ("Issues of *** mitigation of damages [is] generally *** to be determined by the trier of fact, and summary judgment *** is appropriate only where reasonable minds would agree that the facts and their reasonable inferences demonstrate that the moving party is entitled to judgment as a matter of law."), *Sarnoff v. De Graf Brothers, Inc.*, 196 Ill. App. 3d 535, 543 (1990) ("Defendant has not factually supported his argument that plaintiff could have mitigated his damages ***. An issue of material fact is not created by the mere allegation of its existence without a presentation of a statement of fact to contradict the movant's version.").

> "Under common law, a plaintiff asserting a breach of contract claim cannot recover damages it could have reasonably avoided. [Citation.] 'In other words, where an injured party permits [its] loss to be unnecessarily enhanced through [its] own negligence or willfulness, that increased loss will be borne by the injured party.' [Citation.] ***
>
> Generally, the defendant must plead the plaintiff's failure to mitigate damages as an affirmative defense, and the defendant bears the burden of proof. [Citation.]" *Kulhanek v. Casper*, 2023 IL App (1st) 221454, ¶¶ 35-36.

¶ 43    We find that the trial court properly denied J & H's motion to reconsider on the grounds a genuine issue of material facts exists with respect to mitigation of damages. First, J & H forfeited the issue by raising the affirmative defense of mitigation of damages (*id*.) for the first time in a motion to reconsider. "Arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited." *Zander v. Carlson*, 2020 IL 125691, ¶ 34. "Fairness dictates that affirmative defenses that are neither pled nor argued at a hearing on the merits may not be raised later in a motion to reconsider." *People v. Keegan*, 334 Ill. App. 3d 1061, 1063 (2002) (citing *Harmon Insurance Agency, Inc. v. Thorson,* 226 Ill. App. 3d 1050 (1992)). J & H forfeited this argument. J & H argues that it did not forfeit its mitigation of damages defense because the trial court should have entered a default judgment rather than granting summary judgment. However, as previously found, the argument that the trial court was required to enter a default judgment fails.

¶ 44    Second, assuming *arguendo* that the issue is not forfeited because the trial court considered the issue by considering Jetz's supplemental memorandum addressing mitigation of damages, J & H has offered no grounds to reverse the trial court's judgment denying the motion to reconsider. "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. J & H failed to demonstrate, or even to argue, the existence of newly discovered evidence, a change in existing law, or any error in the trial court's application of the law.

¶ 45    First, Patel's affidavit is not newly discovered evidence for purposes of a motion to reconsider an order granting summary judgment. *Horlacher v. Cohen*, 2017 IL App (1st)

162712, ¶ 82 ("With respect to a motion to reconsider in civil cases, newly discovered evidence has been defined as evidence that was not available at the time of the prior order or hearing."), *Decker v. Thao*, 2023 IL App (1st) 220961-U, ¶ 32 (citing *Greenhill v. REIT Management & Research, LLC*, 2019 IL App (1st) 181164, ¶ 78 for the proposition that "newly discovered evidence for purposes of a motion to reconsider a summary judgment ruling is evidence that was 'not available at the time of the hearing' of the initial summary judgment motion").

¶ 46     Second, as for the trial court's application of the law, the court rejected J & H's argument that Jetz wrongfully failed to mitigate damages, because any failure to place its machines with a third party to mitigate damages was due to J & H's "lulling" of Jetz into thinking that it could return the equipment to the original location or place the equipment in a new hotel to be purchased by J & H.

> "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. [Citation.]" (Internal quotation marks and emphasis omitted.) *Steinmetz v. Wolgamot*, 2013 IL App (1st) 121375, ¶ 40.

"Generally, the question of whether a plaintiff's reliance was reasonable is a question of fact; however, where only one conclusion can be drawn from the undisputed facts, the question becomes one for the court to determine." (Internal quotation marks and citation omitted.) *Steinmetz*, 2013 IL App (1st) 121375, ¶ 41.

¶ 47    Jetz's supplemental brief in support of its motion for summary judgment argued that for "years" J & H's counsel had "represented during settlement discussions that [J & H] intended to place Jetz either at the subject Property" or at another possible hotel. There is no dispute of fact that J & H did not purchase another hotel. Patel's affidavit stating that since the lawsuit commenced, J & H has "been offering [Jetz] to return its *** machines back into the DaysInn *** or other motels I have been managing, but [Jetz] refused" because Jetz "wanted an unreasonable amount of cash money ***" was not before the trial court during the proceedings on the motion. "Affidavits may not be added by either party as a matter of right after a hearing and decision on a motion for summary judgment, but rather the allowance of affidavits presented for the first time in connection with a motion to vacate is within the discretion of the trial court." *Kaplan v. Disera*, 199 Ill. App. 3d 1093, 1097 (1990). "It is the appellant's burden on appeal to demonstrate that an abuse of discretion has occurred in the trial court warranting reversal." *In re Marriage of Pick*, 167 Ill. App. 3d 294, 307 (1988). "An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the position adopted by the trial court. [Citation.]" (Internal quotation marks omitted.) *Wolkowitz v. Jamison*, 2024 IL App (1st) 230455, ¶ 34.

¶ 48    J & H has not presented argument or evidence that the trial court abused its discretion by not considering Patel's affidavit to raise a genuine issue of fact. Moreover, we find that the trial court participated in the parties' negotiations and would be familiar with their respective

positions on resolution of this dispute. Based on the record before this court it is not unreasonable that the trial court could find that the only reasonable conclusion from the undisputed facts was that J & H lulled Jetz into inaction in placing its machines elsewhere. Therefore, not only is J & H's mitigation of damages defense forfeited, J & H failed to establish that the trial court abused its discretion in finding that J & H was estopped from raising it.

¶ 49 We find that J & H failed to establish that the trial court abused its discretion in denying the motion to reconsider the trial court's judgment granting summary judgment in favor of Jetz or in awarding damages.

¶ 50 Jetz also seeks an award of its attorney fees and costs incurred in this appeal pursuant to the parties' contract. We remand the case to the trial court to consider Jetz's petition for fees and costs.

¶ 51                                    CONCLUSION

¶ 52 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, and the case is remanded for further proceedings.

¶ 53 Affirmed and remanded.